# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - DETROIT

IN THE MATTER OF:

Spry Publishing, LLC

Debtor.

Bankruptcy Case No. 21-43817
Hon. Mark A. Randon
Chapter 11

## DECLARATION OF JAMES M. EDWARDS
## IN SUPPORT OF DEBTOR'S FIRST DAY PLEADINGS

In support of the above captioned Debtor's first day pleadings, I, James M. Edwards, declare as follows:

1. Except as otherwise stated herein, I make this declaration upon personal knowledge and, if called as a witness, could competently testify to the facts contained herein.

2. I am the responsible person for the Debtor.

3. On April 30, 2021 (the "Petition Date") the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

4. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to, *inter alia*, § 1184 of the Bankruptcy Code.

5. I have been informed that a Subchapter V Trustee has not yet been appointed or designated in this case.

6. The Debtor serves the medical community by providing books and digital assets to patients suffering from chronic diseases through its partner-network of pharmaceutical companies. While the Debtor was founded in 2012, it has family roots in publishing going back to 1893 and has continuously published for nearly 130 years with nearly 200 titles in print and thousands of titles on the backlist. Finding consistent and continual success in publishing, the company saw opportunity in content marketing and acquired The Word Baron in 2014 and PWB Marketing Communications in 2019 under the company name Spry Ideas. In 2020, having experienced a less than stellar foray into content marketing, the company ceased all content marketing operations and closed that portion of the business. The Debtor has since streamlined its operations and filed its bankruptcy case as a means of reorganizing its financial affairs.

7. In order to minimize the potentially adverse effects of the bankruptcy filing on its business the Debtor has requested first day relief (collectively, the "<u>First Day Motions</u>") that are intended to allow the Debtor to maintain ongoing business operations and fulfill its duties as debtor in possession. The First Day Motions are:

    a. First Day Motion for Entry of Order (A) Authorizing Debtor to Pay Employee Obligations; and (B) Directing Financial Institutions to Honor

Outstanding Employee-Obligations Payments (the "<u>Employee Obligations Motion</u>"); and

  b. Motion for Entry of Interim and Final Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection (the "<u>Cash Collateral Motion</u>").

8. The majority of the value of the Debtor arises from its ongoing operations and ability to continue to provide services to customers. Without authority of the Court granting the relief requested in the First Day Motions, the Debtor would suffer irreparable harm because it will be forced to immediately shut down.

## The Employee Obligations Motion

9. As of the Petition Date, the Debtor employs approximately three employees (the "<u>Employees</u>") in the ordinary course of its business and incurs obligations to them for compensation for their services. Two of the Employees are paid hourly wages while one receives a salary. One of the Employees may be an insider, as defined in § 101(31) of the Bankruptcy Code.

10. The Debtor has costs and obligations with respect to the Employees relating to the period before the Petition Date. Certain of these costs and obligations are due and payable, while others will become due and payable after the Petition Date in the ordinary course of the Debtor's business.

11. Before the Petition Date, and in the ordinary course of its business, the Debtor typically paid obligations relating to wages (the "Wages") biweekly on Thursday for the two-week period ending the previous Saturday. The Debtor pays the wages by direct deposit and uses a third-party payroll service to assist in proper administration.

12. The Debtor is also required by law to withhold from its Employees' Wages applicable amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes (collectively, the "Withholding Taxes") and to remit the same to the appropriate taxing authority (collectively, the "Taxing Authorities").

13. Furthermore, the Debtor is required to make payments from its own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll and subject to state-imposed limits, additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "Employer Payroll Taxes" and together with the Withholding Taxes, the "Payroll Taxes").

14. Employees all also entitled to receive paid days off ("PDO"). Unless otherwise agreed by the Debtor, Employees in years one through four of employment are entitled to ten (10) paid days off annually, and Employees with more than four years of employment are entitled to fifteen (15) paid days off

annually.  PDO may not be rolled over year-to-year.  As of the Petition Date, the Debtor is current with respect to its PDO obligations.

15. Certain Employees may incur various expenses in the discharge of their ordinary duties (the "Reimbursable Expenses").  Because these Reimbursable Expenses are incurred as part of their official duties and in furtherance of the Debtor's business, the Debtor reimburses the Employees in full for these expenses, subject to the submission of proper documentation.  To enable the Employees to perform their jobs effectively, the Debtor must continue policies of permitting certain Employees to incur business related expenses and thereafter seek reimbursement of such expenses. In the ordinary course of the Debtor's business, Employees may travel to meet with customers, vendors, or suppliers and are reimbursed for expenses incurred in connection therewith.  The Employees may be unwilling or unable to continue these vital business practices if they are not reimbursed for these Reimbursable Expenses, thus irreparably injuring the Debtor's business.

16. In addition to the foregoing and in the ordinary course of its business, the Debtor maintains employee benefit programs (the "Benefits"), for which the Debtor contributes all or a part of the expenses.  These Benefits include:

    a. Health Insurance Plans:  The Debtor provides Employees healthcare coverage administered by the Blue Cross Blue Shield and dental coverage

and VSP coverage through VSP Vision Insurance Company. Unless otherwise agreed, the Debtor pays a portion of the health plan premiums for medical and dental coverage and the Employees.

   b. <u>Insurance</u>: The Debtor also provides each employee with a $10,000.00 term life insurance policy administered through Guardian Insurance Company ("<u>Guardian</u>"). Further, Debtor offers additional voluntary life insurance through Guardian; however, the additional voluntary life insurance policies are not paid by the Debtor.

17. Absent the entry of an Order granting the Employee Obligation Motion, for the reasons stated therein and herein, the Debtor and its employees will suffer immediate and irreparable harm.

## **The Cash Collateral Motion**

18. The following is a summary of facts set forth in the Cash Collateral Motion as well as the relief requested therein. The filed Cash Collateral Motion should be consulted for a complete description of its contents.

19. The Debtor requires use of Cash Collateral to make such payments as are necessary for the continuation of its business, as shown on the exhibit attached the Cash Collateral Motion (the "<u>Budget</u>").

20. The Budget projects the Debtor's anticipated revenue and expenses and demonstrates the amount of funds the Debtor must expend on its operation on a monthly basis to avoid immediate and irreparable harm.

21. Without the ability to make the payments as set forth in the Budget, the Debtor would be unable to continue operating and would be forced to shut down its operations on an emergency basis. A majority of the Debtor's value arises from the on-going operations. Further, an immediate cessation of operation would cause enormous hardship for all of the Debtor's customers and employees. Accordingly, authorizing the Debtor to use its Cash Collateral as set forth in the Budget is in the best interest of all creditors and parties in interest.

22. Before the Petition Date, Fifth Third Bank, National Association (the "Bank") filed a UCC-1 financing statement against certain of the Debtor's assets, including its cash collateral. The Debtor anticipates that the Bank will assert a security interest in the Debtor's Cash Collateral. The Debtor further anticipates that the Bank will assert that its security interest and liens have first priority over all other security interests and liens asserted against the Debtor.

23. Before the Petition Date, the U.S. Small Business Administration (the "SBA") also filed a UCC-1 financing statement against certain of the Debtor's assets, including its cash collateral. The Debtor anticipates that the SBA will assert a security interest in the Debtor's Cash Collateral. The Debtor further anticipates

that the SBA will assert that its security interest and liens have second priority over all other security interests and liens asserted against the Debtor.

24. The Debtor makes no admission and take no position at this time regarding the validity, enforceability, priority or perfection of any the obligations, security interests and liens that may be asserted by either the Bank or SBA.

25. The Debtor believes that no entities have an interest in its Cash Collateral other than the Bank and SBA.

26. Absent the entry of an Order granting the Cash Collateral Motion, for the reasons stated therein and herein, the Debtor will suffer immediate and irreparable harm.

## Conclusion

27. I have read, reviewed, and approved each of the First Day Motions.

Pursuant to 28 U.S.C. § 1746, I declare to the best of my knowledge, under penalty of perjury, that the above statements are true and correct.

**SPRY PUBLISHING, LLC**

By: /s/ James M. Edwards
James M. Edwards
Its: Responsible Person

Dated: April 30, 2020